IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JACQUELINE EDWARDS, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 16-425-RGA |
| BAYVIEW LOAN SERVICING, LLC, | : |
| Defendant. | : |

Jacqueline Edwards, Wilmington, Delaware. Pro Se Plaintiff.

Catherine M. Di Lorenzo, Esquire, Alba Law Group, P.A., Newport, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

March 15, 2019
Wilmington, Delaware


ANDREWS, U.S. District Judge:

Plaintiff Jacqueline Edwards, who appears *pro se* and has paid the filing fee, filed this action on June 8, 2016, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* (D.I. 2). The Amended Complaint is the operative pleading. (D.I. 23). The parties have filed cross-motions for summary judgment and briefing is complete. (D.I. 32, 34).

I.  **BACKGROUND**

The verified Complaint alleged that Defendant is a debt collector, Plaintiff is a consumer, and Defendant illegally communicated with Plaintiff by failing to comply with 15 U.S.C. § 1692c(a). (D.I. 2). The original complaint was dismissed upon Defendant's motion and Plaintiff's motion for leave to amend.[1] The Amended Complaint raises two claims: Count 1, pursuant to 15 U.S.C. § 1692g (validation of debts);[2] and Count 2, pursuant to 15 U.S.C. § 1692e (false or misleading representations. (D.I. 23). Plaintiff seeks statutory and actual damages.

---

[1] The Court granted in part and denied in part Plaintiff's motion for leave to amend. It found that the proposed Amended Complaint failed to state a claim under 15 U.S.C. § 1692d (harassment or abuse). (D.I. 16, 17). Plaintiff was given leave to file an amended complaint to cure the pleading defects as to the § 1692d claim. (*Id.*). She did not.

[2] The verified Complaint included an Exhibit 1, which was not included with the Amended Complaint. (D.I. 2-1). Exhibit 1 is a debt validation letter, dated March 14, 2016 and postmarked March 15, 2016, to Plaintiff from Defendant advising Plaintiff that it sought to bring Plaintiff's mortgage account current, and that it was attempting to collect a debt on behalf of "U.S. Bank National Association, as trustee, in trust for the benefit of the holders of WB4B REMIC Trust 2016-1 beneficial interest certificates, series 2016-1" ("U.S. Bank"), the current owner of Plaintiff's loan. The letter advises Plaintiff of the loan number, the property address, and the loan amount, further advises Plaintiff how to dispute the validity of the debt, and provides contact information.

1

The Amended Complaint contains numerous exhibits, as follows: (1) Exhibit 1, a March 14, 2016 letter to Plaintiff from Defendant introducing her "dedicated point of contact"; (2) Exhibit 2, a March 18, 2016, "transfer of service notice"; (3) Exhibit 3, an April 11, 2016 letter to Plaintiff from Defendant advising Plaintiff that its records show expiration of hazard insurance; (4) Exhibit 4, Plaintiff's May 3, 2016 notice of dispute to Defendant; (5) Exhibit 5, Defendant's May 12, 2016 response to Plaintiff's dispute of the validity of the debt, which includes copies of Defendant's account activity statements, March 18, 2016 transfer of service notice, March 7, 2006 mortgage, undated Allonge to Note payable to CitiFinancial Service LLC; August 12, 2015 assignment of mortgage, March 7, 2006 note, March 7, 2006 HUD-1 form, good faith estimate, September 11, 2014 notice of default, and July 18, 2010 notice of intent to accelerate; (6) Exhibit 6, a May 20, 2016 letter from Defendant to Plaintiff regarding an adjustment affecting the interest due and advising Plaintiff that if she received a debt validation letter when her loan originally transferred to Defendant, an updated copy would be mailed to her;[3] (7) Exhibit 7, the updated May 23, 2016 debt validation letter advising Plaintiff that it seeks to bring Plaintiff's mortgage account current, that it is attempting to collect a debt on behalf of U.S. Bank, the current owner of Plaintiff's loan, and advising Plaintiff of the loan number, the property address, the loan amount, how to dispute the validity of the debt, and providing contact information; and (8) Exhibit 8, the August 14, 2016 mortgage statement. (See D.I. 23).

---

[3] Defendant first sent a debt validation letter to Plaintiff on March 14, 2016, following transfer to it on March 3, 2016. (See D.I. 2 at Ex. 1; D.I. 23 at 26).

Plaintiff executed a note and mortgage on March 7, 2006 with CitiFinancial, Inc. (D.I. 23 at 53-58). Plaintiff defaulted on the loan in 2014. *See Bayview Loan Servicing LLC v. Edwards*, C.A. No. N16L-01-070 ALR, Amended Complaint (Del. Super. June 21, 2016).

On August 12, 2015, CFNA Receivables, Inc. F/K/A CitiFinancial, Inc. assigned its interest to CitiFinancial Servicing, LLC. (*Id.* at 59). On March 4, 2016 Defendant became the new loan servicer for Plaintiff's loan.[4] (*Id.* at 26). An allonge to the note was executed on March 22, 2016 wherein CitiFinancial Servicing, LLC endorsed the instrument in blank. (D.I. 36 at Ex. D). On March 31, 2016 CitiFinancial Servicing, LLC assigned its interest to Defendant. (*Id.* at Ex. C).

Defendant is the servicer for U.S. Bank with authority to administer the loan and collect payments as creditor. (D.I. 42 at Ex. E, Admission Nos. 1, 2, 3). The original note was transferred to Defendant, and its custodian has possession of the original promissory note. (*Id.* at Admission Nos. 7, 8). Defendant sent Plaintiff two letters on March 14, 2016, a debt validation letter indicating that it was attempting to collect a debt on behalf of U.S. Bank and a letter designating a point of contact. (D.I. 36 at Exs. E, F). On May 9, 2016, Plaintiff disputed the debt by a letter dated May 3, 2016. (D.I. 23 at 39-42). On May 12, 2016, Defendant acknowledged receipt of the dispute letter, advising that it had acquired servicing of the loan on March 4, 2016, and that it was given the servicing rights. (*Id.* at 44). With the May 12, 2016 letter Defendant provided

---

[4] In Delaware Superior Court, Bayview Loan Servicing stated in its response to Edwards' motion to dismiss that the loan was transferred to it on or about March 4, 2016. (*See* C.A. No. N16L-01-070 ALR (Del. Super.)).

Plaintiff a copy of an account activity statement that provided a detailed accounting of all transactions, a notice of the transfer, mortgage, assignment of mortgage, note, HUD1, good faith estimate, notice of default, and notice of intent to accelerate. (*Id.* at 44-72).

On May 20, 2016, Defendant sent Plaintiff a letter advising that it had reviewed her loan. The review resulted in an adjustment affecting the interest due and noted that the new interest balance was as of the date Defendant received Plaintiff's last payment or the date the loan was transferred to Defendant, "whichever is greater." (*Id.* at 74). The letter further advised that if Plaintiff had received a debt validation letter when her loan originally transferred to Defendant, an updated copy would be mailed to her. (*Id.*). On May 23, 2016, Defendant sent Plaintiff another debt validation letter, and she responded with a second notice of dispute on June 7, 2016. (*Id.* at 76; D.I. 33 at 52 (Ex. C, answer to interrogatory No. 6)). In August 2016, Defendant sent Plaintiff an August 14, 2016 mortgage statement. (*Id.* at 80-81).

Foreclosure proceedings were initiated against Plaintiff in the Superior Court of the State of Delaware in and for New Castle County on January 18, 2016 by CitiFinancial Servicing LLC. (D.I. 33 at 72 (Ex. D, ¶)). With leave of Court, Defendant, through its foreclosure counsel, amended the complaint to substitute the parties on June 21, 2016 (*Id.*). After Plaintiff failed to participate in the mortgage mediation process, she was ordered to answer. (*Id.* at 73). Defendant filed a motion for summary judgment in the foreclosure proceeding, which was granted, and an order entered against Plaintiff on March 13, 2017 for the principal balance of $104,315.52; interest from March 3, 2016 to September 23, 2016 at $26.20 per diem in the sum of $21,956.20, as well as other costs, plus interest from September 23, 2016 at $26.20 per

diem for a total debt due of $127,175.09. (*Id.* at 70). The Court takes judicial notice that Plaintiff did not appeal the Delaware Superior Court order awarding judgment and that the property was sold at an October 9, 2018 Sheriff's Sale. Plaintiff commenced this action on June 8, 2016 prior to the sale of the property. (D.I. 1).

## II.  LEGAL STANDARDS

Both parties move for summary judgment. Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The same standards and burdens apply on

5

cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## III. DISCUSSION

Both Plaintiff and Defendant contend that there are no genuine issues of material fact in dispute and that summary judgment is appropriate for its side. Plaintiff's grounds for summary judgment are that: (1) Defendant failed to send Plaintiff a debt validation letter in violation of 15 U.S.C. § 1692g; and (2) Defendant made false and misleading representations in violation of 15 U.S.C. § 1692e in its May 12, 20, and 23 and August 14, 2016 communications. Defendant's position is that Plaintiff has no evidence of the necessary material facts to support her claims that Defendant violated 15 U.S.C. § 1692g and § 1692e.

The FDCPA, 15 U.S.C. § 1692, *et seq.*, "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). "Because the FDCPA is a remedial statute, the Third Circuit has construed its language broadly so as to give effect to its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). A plaintiff bringing an FDCPA claim must show that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). The Act is limited to "consumer debt," defined as those debts "arising out of . . . transaction[s]" that are "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *Heintz*, 514 U.S. at 293.

## A. Section 1692g

The FDCPA requires debt collectors to furnish notice containing certain information, within five days of an "initial communication," to consumers believed to owe a debt. *See id.* at § 1692g(a). Under § 1692g(a) the notice must contain:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Upon receipt of such notice, the consumer has thirty days to inform the debt collector in writing that he or she either disputes the debt or requests the name and address of the original creditor. *See id.* at § 1692g(b). If the consumer does that, then the debt collector must cease its collection efforts until it provides verification of the debt. *See id.*

Plaintiff's position (D.I. 33 at 1) is that her initial communication from Defendant was the March 14, 2016 letter, mailed March 16, 2016, introducing her to her dedicated point of contact (D.I. 23 at 2, ¶¶ 4-6; *id.* at 19-23 (Ex. 1)), and it did not contain the required § 1692g(a) clauses. Defendant's position is that it sent Plaintiff a debt validation letter dated March 14, 2016, and that, even if Plaintiff received the dedicated

7

point of contact letter first, Plaintiff received the debt validation letter within five days of the initial communication (*i.e.*, the dedicated point of contact letter).

The record reflects that Defendant sent Plaintiff the first debt validation letter on March 14, 2016, and that Plaintiff responded with a notice of dispute. Defendant sent Plaintiff a second debt validation letter on May 23, 2016, and Plaintiff responded with a second notice of dispute on June 7, 2016. While not entirely clear, Plaintiff seems to argue that her claim that Defendant did not send a debt validation letter is supported by Defendant's discovery responses that U.S. Bank is the current owner of the loan and Defendant did not mention the first debt validation letter sent to Plaintiff on March 14, 2016 or that Plaintiff failed to timely dispute the first debt validation letter. (*See* D.I. 33 at 5-6; Ex. C at answer to interrogatory No. 9). Plaintiff does not refer to the May 20, 2016 letter that advised her if she had received a debt validation letter when her loan originally transferred to Defendant, an updated copy would be mailed to her.

It is puzzling that Plaintiff does not acknowledge the March 14, 2016 debt validation letter given that she attached a copy of it to her initial complaint. (*See* D.I. 2 at Ex. 1) While Plaintiff describes the letter as a "dunning communication," it is clear that it is a debt validation letter and is dated the same date, March 14, 2016, as the dedicated point of contact letter. (*See id.* at ¶ 4 and Ex. 1). It is undisputed that the March 14, 2016 debt validation letter contains all the clauses required by § 1692g(a) as does the May 23, 2016 validation letter. Finally, regardless of which letter was received first, the March 14th debt validation letter or the March 14th dedicated point of contact letter, the evidence of record supports a finding that the debt validation letter was furnished within five days of Defendant's initial communication with Plaintiff.

8

Plaintiff's position is simply not supported by the evidence of record and no reasonable jury could find that Defendant violated 15 U.S.C. § 1692g. Therefore, as to this issue, the Court will grant Defendant's motion for summary judgment and will deny Plaintiff's motion for summary judgment.

**B.     Section 1692e**

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e ¶¶ (1)-(16) enumerates a non-exhaustive list of certain per se violations of false and deceptive collection conduct under this section, including false representations concerning the character, amount, or legal status of any debt. *See* 15 U.S.C. § 1692e(2)(A). A communication is deceptive for purposes of the FDCOA if "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d at 455).

Claims under § 1692e "should be analyzed from the perspective of the 'least sophisticated debtor.'" *Brown*, 464 F.3d at 453 (quoting *Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000)). The standard requires more than "'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Id.* at 454 (quoting *Quadramed*, 225 F.3d at 354). The least sophisticated debtor standard "also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read

9

with care." *Quadramed*, 225 F.3d at 354-55 (quotation marks omitted). In addition, "[a]lthough established to ease the lot of the naive, the [least sophisticated debtor] standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008). "Rulings that ignore these rational characteristics of even the least sophisticated debtor and instead rely on unrealistic and fanciful interpretations of collection communications that would not occur to even a reasonable or sophisticated debtor frustrate Congress's intent to 'insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Id.* (quoting 15 U.S.C. § 1692(e)).

Plaintiff moves for summary judgment under § 1692e on the grounds that the May 12, 20, and 23, 2016 letters, as well as the August 14, 2016 mortgage statement, contain false and misleading information. Defendant moves for summary judgment under § 1692e on the grounds that Plaintiff produced no facts to support this claim.

Plaintiff contends Defendant made a false statement in its May 12, 2016 letter that acknowledged Plaintiff was disputing the validity of the debt, asserting the letter misrepresents that U.S. Bank is the owner of the loan, and misrepresents the principal/escrow balance of $104,325.52, the current balance owed of $94,348.47, and the principal and interest payment of $834.03. She contends Defendant's May 20, 2016 letter advising of the adjustment affecting the interest due misrepresents that U.S. Bank is the owner of the loan and misrepresents the new interest balance due of $16,716.74. Plaintiff contends the May 23, 2016 debt validation letter misrepresents that U.S. Bank is the owner of the loan and misrepresents that she owed $123,156.04. Finally, Plaintiff

10

contends the August 14, 2016 mortgage statement misrepresents the $23,352.84 amount due on September 13, 2016 that Plaintiff needed to pay to make her loan current, the outstanding balance of $94,348.47,[5] the deferred amount of $9,967.06, the interest rate of 9.996%, and other miscellaneous fees.

To support her claim that Defendant misrepresented that U.S. Bank is the owner of the loan, Plaintiff contends the initial communication received from Defendant dated March 14, 2016 (presumably the first debt validation letter) misrepresented that U.S. Bank was the owner of the note. Plaintiff's position is that the allonge to the note, dated March 22, 2016, proves that U.S. Bank was not the owner of the note when she was given the initial communication. Plaintiff's view is that each succeeding communication referenced U.S. Bank as the owner of the loan was therefore misleading. (D.I. 42 at 7). Defendant responds that U.S. Bank received the note in March 2016 prior to the initial communications that were sent to Plaintiff, U.S. Bank became owner upon delivery, and therefore no false statements were made.

The evidence of record indicates that Plaintiff's loan, which had been serviced by CitiFinancial Servicing LLC, was transferred for servicing to Defendant on March 4, 2016, and that CitiFinancial Servicing LLC would stop accepting mortgage payments after March 3, 2016. (D.I. 23 at 26). The unrefuted evidence is that original note was transferred to Defendant and its custodian has possession of the original promissory note. (D.I. 42 at 120). The evidence also indicates that in several communications Defendant refers to U.S. Bank as the "current owner of [Plaintiff's] loan. (D.I. 2 at Ex 1;

---

[5] The outstanding principal balance and the deferred amount total $104,315.52.
11

D.I. 23 at 44, 76). In addition, in response to Plaintiff's Request for Admission No. 20, Defendant denied that it misrepresented U.S. Bank is the current owner of the loan. (D.I. 33 at Ex. C). Plaintiff presents no contradictory evidence.

Plaintiff relies upon the fact that the allonge to the note is dated March 22, 2016. But that is not the crucial fact.

> The [Delaware Uniform Commercial Code] defines negotiation as "a transfer of possession, whether voluntary or involuntary...." "If an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." The DUCC also notes "an instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving the person receiving delivery the right to enforce the instrument." "Transfer of an instrument, whether or not ... [by] negotiation, vests in the transferee *any* right of the transferor to enforce the instrument (emphasis added)...." Thus, the person entitled to enforce an instrument is: (1) the holder of the instrument; (2) a nonholder in possession of the instrument who has the rights of a holder; or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3–309 or 3–418(d).

*Toelle v. Greenpoint Mortg. Funding, Inc.*, 2015 WL 5158276, at *3 (Del. Super. 2015) (footnotes omitted).

Here, the evidence of record is that Defendant did not misrepresent the owner of the loan and that the servicing of the loan was transferred to it as the new loan servicer on March 4, 2016, prior to the time it sent the March 14, 2016 debt validation letter, and that the note was transferred to, and is in the possession of, Defendant's custodian. Nor did the subsequent communications specifically referred to by Plaintiff misrepresent the owner of the loan or the servicer of the loan.

Plaintiff also asserts that the dollar amounts in the four referenced communications are false and misleading, but provides no evidence to support her position. Customer account activity statements provided by Plaintiff contain figures that

are consistent with those in the May 12, 2016 letter acknowledging Plaintiff's dispute of the validity of the debt. The Court takes judicial notice that the judgment entered against Plaintiff in the mortgage foreclosure action included the principal balance amount of $104,315.52, a figure consistent with the May 12, 2016 letter and the August 14, 2016 mortgage statement total of the outstanding principal balance and deferred amount. In addition, the amount owed continued to change as interest accrued. Upon review of the evidence, the Court concludes that even the least sophisticated consumer would neither find the communications false nor be misled as to the monies Plaintiff owed, including the principal, interest, interest rate, monthly payment and other miscellaneous fees set forth in the communications referenced by Plaintiff. *See, e.g., Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009). Accordingly, the Court finds there are no disputed issues of fact concerning the alleged violations of § 1692e, and no support for Plaintiff's case.

Based upon the evidence of record, no reasonable jury could find for Plaintiff on the § 1692e claim. Therefore, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's motion for summary on this claim.

## IV. CONCLUSION

Based upon the above discussion, the Court will: (1) deny Plaintiff's motion for summary judgment (D.I. 32); and (2) grant Defendant's motion for summary judgment (D.I. 34).

An appropriate order will be entered.